**YELLOW FORWARDING COMPA-
NY et al., Plaintiffs,**

v.

**INTERSTATE COMMERCE COMMIS-
SION et al., Defendants.**

**Civ. A. No. KC–3708.**

United States District Court,
D. Kansas.

Nov. 15, 1973.

John E. Jandera, Jandera & Christey, Topeka, Kan., William J. Lippman, Washington, D. C., for plaintiffs.

Hanford O'Hara, Atty., Fritz R. Kahn, Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Robert J. Roth, U. S. Atty., Kansas City, Kan., John H. D. Wigger, Atty., Thomas E. Kauper, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for United States of America.

Harold E. Mesirow, Washington, D. C., Wash H. Brown, Kansas City, Kan., for Alltransport Inc.

Before HILL, Circuit Judge, and TEMPLAR and O'CONNOR, District Judges.

O'CONNOR, District Judge.

This action was instituted to enjoin, set aside and annul orders of the Interstate Commerce Commission granting domestic freight forwarder authority to Alltransport Incorporated, pursuant to Section 410 of the Interstate Commerce Act [49 U.S.C. § 1010]. Jurisdiction of this court to review the Commission's orders is predicated on 28 U.S.C. § 1336(a), § 1398(a), § 2284 and §§ 2321 to 2325, 49 U.S.C. § 17(9) and 5 U.S.C. § 702.

By application filed January 27, 1971, as subsequently amended, Alltransport sought a permit under Section 410 of the Act to operate as a freight forwarder through the use of rail and motor common carriers in the transportation of general commodities (with certain exceptions), from points in Illinois, Indiana, Ohio, Wisconsin, Minnesota and Michigan, to Montreal, Quebec, Canada and Halifax, Nova Scotia, Canada, restricted to export traffic moving in containers and having a subsequent movement by water. The application was jointly protested by plaintiffs, who are domestic freight forwarders, on the grounds, *inter alia*, that the authority sought conflicted with their existing authority to forward export freight from the territory Alltransport sought to serve, and also conflicted with their existing operations conducted pursuant to such authority. Over plaintiffs' objection the application was assigned for handling under the commission's modified procedure. Verified statements were filed by the respective parties and on April 3, 1972, the Commission, acting through its Employee Review Board No. 3, issued a report and order granting Alltransport's application, except that the origin territory of six states initially requested was reduced to two—Illinois and Wisconsin.

Subsequently, plaintiffs sought reconsideration of the decision, urging that the proceedings be reopened and further hearings be held. The Federal Maritime Commission also petitioned for leave to intervene alleging that the decision "fails to consider the effect upon United States, Great Lakes and Atlantic Coast ports of the routing of cargo through Atlantic Coast Canadian ports, which . . . is a matter of concern to the F. M.C." The petition to intervene was granted and was accepted as a petition for reconsideration. Both petitions for reconsideration were denied by Division 1 of the Commission acting as an appellate division. Among other things the appellate division determined (1) that the findings of the Review Board were in accordance with the evidence and applicable law; and (2) that the issuance of the permit (a) will not by itself mean that prevailing traffic patterns will be naturally altered, that United States, Great Lakes and Atlantic Coast ports will be affected to any significant degree, or that material quantities of traffic will be diverted from American to Canadian ports, and (b) will be consistent with the public interest and the National Transportation Policy. Thereupon, plaintiffs sought review of the proceedings by the entire Commission by filing a "Petition Seeking a Finding of General Transportation Importance," which was denied in an order issued March 20, 1973.

The present action was filed in this court on March 27, 1973, and plaintiffs' motion for a temporary restraining order was denied.

In attacking the Commission's decision, plaintiffs advance three basic arguments:

1. The key findings of the Commission are not supported by reliable, substantial evidence and the decision is contrary to the Commission's own standards.

2. The Commission's conclusion that the proposed service is consistent with the National Transportation Policy is not supported by subsidiary findings, is arbitrary, capricious and an abuse of discretion, and lacks a rational foundation.

3. Plaintiffs were denied a fair hearing and procedural due process.

I

At the outset we should make clear that the scope of judicial review of the Commission's orders is extremely limited. As in the case of any action by an administrative agency, a presumption of validity attaches to an order of the Commission, and the burden of showing the invalidity of the order rests on the party attacking the order. King Van Lines, Inc. v. United States, 220 F.Supp. 551 (D.C.Kan.1963); Frozen Foods Express, Inc. v. United States, 346 F.Supp. 254 (W.D.Tex.1972), and cases cited therein. The task of weighing the evidence is for the Commission and not the Court. Manley Transfer Co., Inc. v. United States (not yet reported, KC–3515, op. May 15, 1973) [370 F.Supp. 1216]; State Corporation Commission of Kansas v. United States, 216 F.Supp. 376 (D.C.Kan.1963), aff'd, 375 U.S. 15, 84 S.Ct. 60, 11 L.Ed.2d 39. The wisdom or "rightness" of the Commission's decision in matters committed to its expertise and determination is not an issue before the reviewing court. Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L. Ed. 432 (1942); United States v. Pierce Auto Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); State Corporation Com'n of Kansas v. United States, 184 F.Supp. 691 (D.C.Kan.1959). If the order to be reviewed is based upon adequate findings supported by substantial evidence, and the Commission has acted within the scope of its statutory authority, we must affirm. Land Air Delivery, Inc. v. United States, 327 F.Supp. 808 (D.C.Kan.1971); Associated Wholesale Grocers, Inc. v. United States, 272 F.Supp. 274 (D.C.Kan.1967).

II

Plaintiffs point to certain "key findings" of the Commission, which they contend are unsupported by and are contrary to the evidence. Specifically, they refer to:

(a) The finding that Alltransport's proposed service is materially different from the services now performed by existing forwarders. Plaintiffs contend they hold themselves out to perform and are performing a service whereby small export shipments are consolidated in steamship containers at inland points (Chicago or Milwaukee) and then shipped through to overseas destinations without rehandling at the port. Plaintiffs say they have performed this type of through-intermodal-container service on exports to Europe through East Coast United States ports for many years, the only difference being that Alltransport proposes to transport the containers through Canadian ports.

We believe there is evidence tending to establish significant differences in the proposed service from that being performed or offered by plaintiffs, thereby supporting the Commission's finding. The proposed service contemplates that shipments would be brought into consolidation points such as Chicago or Milwaukee for "stuffing" into twenty-foot marine containers, moved by container-on-flat-car service to Montreal or Halifax, and then off-loaded directly from the rail car to a marine terminal for ultimate shipment abroad. On the other hand, plaintiffs principally employ a break-bulk service which involves the loading of forty-foot trailers at a consolidation point and subsequent movement by trailer-on-flat-car service to an East Coast port. They also provide a con-

tainer service from a consolidation point, but this too employs trailer-on-flat-car service. Usually forty-foot containers are used, which because of their size require a much longer time to be filled and made ready for shipment.

■ In addition to the differences in the method of consolidation and forwarding, there are problems which are found at East Coast ports that are not encountered at Halifax and Montreal. Because of the great volume of goods moving through United States East Coast ports, particularly New York, shipments are frequently subject to congestion, delays and added costs. At New York, for example, rail termination points are usually some distance from the piers; thus the shipments incur delays and costs because of local cartage from one place to another. Once at the pier, the large volume of traffic forces the local cartage operators to spend a considerable time waiting to deliver their containers. Such problems are compounded if it is necessary to transfer cargo from a trailer or container used for the inland portion of the movement to another container for the ocean portion. At Halifax and Montreal, containers arrive at the marine terminal and are transferred directly on board the ocean vessel. We can only conclude that the Commission's finding that the proposed service is materially different from the service of plaintiffs is fully supported by the evidence.

(b) The finding that there is no existing mechanism for using Canadian ports. Plaintiffs argue that the principal, if not the sole, justification for Alltransport's proposed service is the desire of the shippers to have an alternate routing via Canadian ports available when United States East Coast ports are closed by strikes. Plaintiffs contend that this is not a good reason for granting new permanent authority for the Canadian routing inasmuch as they have received limited authority to use Canadian ports in the past when strikes occurred.

■ Plaintiffs' argument completely misconstrues the true nature of the justification for Alltransport's proposed service. While the shippers expressed a desire to avoid the labor problems on the East Coast, this was a relatively minor concern. The record clearly shows that the shippers' primary concern was for regular, reliable service through the Canadian ports and further shows that no mechanism now exists to provide such service. Accordingly, the Commission justifiably found that the additional authority should be granted to Alltransport so that the shippers could have an alternate routing on a year-round basis.

(c) The lack of specific findings as to the inadequacy of existing forwarder service. The gist of plaintiffs' argument is that they are performing an efficient, economic and satisfactory service; that the shippers who supported Alltransport's application have not tried plaintiffs' existing services; and that such services must therefore be deemed adequate. The adequacy of existing services is said to be a vital factor, often of controlling significance, in evaluating the merits of a freight forwarder application.

■ Section 410(c) of the Interstate Commerce Act provides for the issuance of freight forwarder service upon a showing that the applicant is ready, able and willing properly to perform the service proposed and the proposed service "is or will be consistent with the public interest and the national transportation policy." The "public interest" criterion is not the equivalent of the "public convenience and necessity" test applied to motor common carrier applications. Rather, it is a somewhat less stringent standard which admits of public interest factors other than those relating to the adequacy or inadequacy of existing services. In other words, the Commission may grant new or additional forwarder authority even though existing service is adequate, provided such a grant of authority is supported by proof of public interest factors of equal

or dominant importance. CTI-Container Transport International Freight Forwarder Application, 341 I.C.C. 169 (1972); D. C. Andrews & Co. of Illinois Extension—Baltimore, Md., 326 I.C.C. 743 (1960). Adequacy of existing service therefore is not a controlling factor, but rather only one of several elements to be considered. Other elements of importance may include the desirability of competition, the desirability of different kinds of service, and the desirability of improved service. Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.C.N.H.1964). All of these elements were included in the strong, affirmative showing which Alltransport made in support of its application. Thus, contrary to plaintiffs' position, there was no necessity for the Commission to make specific findings as to the inadequacy of existing forwarder service. *Id.*; Norfolk Southern Bus Corp. v. United States, 96 F.Supp. 756 (E.D.Va. 1950).

(d) The finding as to whether Alltransport is presently an active freight forwarder. Plaintiffs claim that Alltransport's present authority to forward imports through Halifax and Montreal is substantially dormant; hence, the Commission allegedly erred in characterizing Alltransport as an "active" freight forwarder.

■ The question of how active Alltransport has been in its import service through Halifax and Montreal seems largely one of semantics. There is evidence that Alltransport handled some import traffic through these ports in previous years, but the volume was certainly not large. In any event, we fail to see how the Commission's characterization of Alltransport as an active freight forwarder is a "key finding" which would bear upon Alltransport's ability to perform the proposed service, and we therefore will not belabor the point any further.

### III

Plaintiffs also challenge the Commission's decision on the ground that it is contrary to the Commission's own standards in the following respects:

■ (a) The evidence of need for the proposed service does not meet the Commission's standard for a *prima facie* case and is not substantial. To establish a *prima facie* case, the Commission has held that affidavits of supporting shippers "must show the commodities shipped or received, the points between which that traffic moved, the volume of freight to be tendered to applicant, the present transportation services used, and the deficiencies in existing services." John Novak Contract Carrier Application, 103 M.C.C. 557 (1967); see also Richard Dahn, Inc. v. I. C. C., 335 F. Supp. 337 (1971). Plaintiffs contend that the affidavits of the seven shippers who supported Alltransport's application dwell upon generalities and fail to mention the specific criteria the Commission requires to make out a *prima facie* case of need.

■ Without trying to respond to each of the allegations which plaintiffs raise about portions of the shippers' statements, we believe that, when viewed objectively, the statements taken as a whole amply satisfy the standards for a *prima facie* case. Suffice it to say that the shippers have demonstrated a real need for Alltransport's proposed service, which plaintiffs do not provide, and that the need shown is consistent with the public interest. Acme Fast Freight, Inc. v. United States, 146 F.Supp. 369 (D.C.Del.1956). We hold that there is substantial evidence relating to all of the criteria set forth in the *Novak* and *Dahn* cases, *supra*.

(b) The evidence does not establish either the inadequacy of existing forwarder service or public interest factors of equal or dominant importance. Plaintiffs are essentially repeating here what they have said above [see section II(c)]. We have already found these arguments devoid of merit.

## IV

Plaintiffs next allege that the Commission's ultimate finding that the proposed service is consistent with the National Transportation Policy and the public interest is unsupported by subsidiary findings, is arbitrary, capricious, and an abuse of discretion, and lacks a rational foundation. In particular, they raise the following objections:

(a) The lack of findings that the proposed service will be consistent with the public interest and the National Transportation Policy. The plaintiffs argue that the Commission has only reached the "bare conclusion" that the public interest and National Transportation Policy are satisfied.

■ The National Transportation Policy, 49 U.S.C. preceding § 1, was formulated by Congress "to govern the Commission in the administration and enforcement of all provisions of the [Interstate Commerce] Act," and it is "the yardstick by which the correctness of the Commission's actions will be measured." Schaffer Transp. Co. v. United States, 355 U.S. 83, 87–88, 78 S.Ct. 173, 176, 2 L.Ed.2d 117 (1957). Though the Commission is vested with a " 'wide range of discretionary authority' in determining whether the public interest warrants certification of any particular proposed service", the court must determine whether such discretion has been properly exercised from the Commission's summary of the evidence, particularly the findings which the Commission has made. *Id.* Those findings must be in conformity with the declared policies of Congress.

■ Plaintiffs do not indicate in what respect the findings of the Commission fail to meet the yardstick of the National Transportation Policy. We have heretofore expressed our approval of the key findings of the Commission in support of the proposed service, and plaintiffs have not raised any additional points to show how these findings are contrary to the National Transportation Policy. There is no requirement, as plaintiffs seem to believe, that the Commission make specific findings as to all the Policy's principles. It is enough that the Commission has determined that the proposed service is consistent with the public interest and the National Transportation Policy and that the Commission's findings support this determination.

(b) Plaintiffs and United States ports are entitled to protection as part of the national transportation system. The plaintiffs argue that the National Transportation Policy and the public interest encompass the protection of existing forwarders who are performing an efficient, economic and otherwise satisfactory service.

■ This is yet another attempt by plaintiffs to relitigate the adequacy or inadequacy of the present service. Our view in this regard needs no further amplification, having been set forth above in section II(c) of this opinion. But going beyond the question of the adequacy or inadequacy of present service, we do not believe plaintiffs are entitled to protection where the proposed service has been shown to be materially different from plaintiff's [see section II(a)].

■ Insofar as plaintiffs assert the need for protection of United States ports as opposed to Canadian ports, we find nothing in the National Transportation Policy which would, in light of the showing of congestion and delay at United States ports, require a different result from that reached by the Commission in this case. The efficient, economic service to shippers in Illinois and Wisconsin which Alltransport proposes to provide fully comports with the public interest and with a fair reading of the National Transportation Policy.

(c) The grant of statewide authority from all points in Illinois and Wisconsin is unsupported by substantial evidence. Plaintiffs contend that seven supporting shippers mentioned only points in or near the Chicago commercial zone and that two supporting shippers mentioned Janesville and Milwaukee in Wisconsin.

Hence, the grant of broader origin territory then Chicago, Janesville and Milwaukee is alleged to be unsupported by any evidence.

■ Alltransport originally requested authority to serve six states, which the Commission reduced to the two states of Illinois and Wisconsin. The testimony adduced of a specific need for the proposed service from representative points in the two states supports the inference of need at other points within the area. Atlanta-New Orleans Motor Freight Co. v. United States, 197 F. Supp. 364 (N.D.Ga.1961). We therefore hold that the Commission's grant of statewide authority is not unreasonably broad and is supported by substantial evidence.

## V

■ Lastly, plaintiffs contend that they were denied a fair hearing. The Commission adopted its modified procedure in this case in an effort to reduce costs and to expedite the decision on Alltransport's application. The procedure calls for using affidavits, depositions, etc., in lieu of oral testimony. The propriety of such a procedure in appropriate cases is judicially well-established. Allied Van Lines Co. v. United States, 303 F.Supp. 742 (C.D.Cal.1969); National Trailer Convoy, Inc. v. United States, 293 F.Supp. 634 (N.D.Okl.1968); see also Land-Air Delivery, Inc. v. United States, *supra*. The plaintiffs raise the following questions about the use of the modified procedure in this case:

(a) The Commission should have granted plaintiffs' motions to strike. Plaintiffs filed their motions to strike certain portions of Alltransport's supporting witnesses statements on evidentiary grounds and also to strike Alltransport's rebuttal evidence on evidentiary grounds and on the ground that it

introduced new evidence. With the exception of the offer by Alltransport of additional financial evidence, which the Commission felt should be disregarded because it was tendered too late, the motions to strike were denied. The Commission held that plaintiffs' objections were "in the nature of argument" and "more properly directed to the weight to be accorded such evidence rather than its admissibility. [at p. 3 of the Commission's decision.] Plaintiffs now contend they were entitled to a ruling on their motions on evidentiary grounds and that the failure to grant their motions caused the Commission "in large measure" to base its findings and conclusion on the allegedly improper evidence.

■■ We have carefully reviewed plaintiffs' objections and see no reason to repeat them here. We are in complete agreement with the Commission that the objections are mainly just argument and that they deal more with the weight of the evidence than with its admissibility. Moreover, even if the evidence were deemed inadmissible, there is no showing that the Commission relied upon it to plaintiffs' prejudice. In view of the ample and competent evidence in the record in support of the proposed service, the matters raised by plaintiffs' motions to strike are at best inconsequential.

(b) Plaintiffs were denied a fair hearing by the Commission's selective treatment of the evidence. The Commission is alleged to have ignored much of plaintiffs' evidence, or to have given it short shrift, all to the plaintiffs' prejudice.

■■ The Commission is only required to state the essential basis of its decision; it need not discuss all aspects of the testimony offered. Columbia Transportation Company v. United States, 167 F.Supp. 5 (E.D.Mich.1958). Plaintiffs' argument ultimately boils

down to disputing the weight to be given the evidence. As we have said on previous occasions, the weight of the evidence is for the Commission rather than the courts. State Corporation Commission v. United States, 216 F. Supp. 376 (D.C.Kan.1963), aff'd per curiam, 375 U.S. 15, 84 S.Ct. 60, 11 L.Ed.2d 39; Manley Transfer Co., Inc. v. United States, 370 F.Supp. 1216 (1973). We accordingly hold that the Commission did not err in its treatment of the evidence.

(c) Plaintiffs were denied a fair hearing by the Commission's failure to allow cross-examination. Under the modified procedure evidence is presented in written form and oral hearings are held only if necessary for cross-examination. 49 C.F.R. §§ 1100.45–1100.54. Here, the plaintiffs requested an oral hearing in order to cross-examine Alltransport's witnesses about alleged issues of material fact arising from the witnesses' verified statements. Plaintiffs contend that the failure to hold such an oral hearing denied them procedural due process.

Alltransport of course opposed the request for an oral hearing and filed a brief in which it painstakingly reviewed plaintiffs' alleged issues of material fact and refuted each one, showing them to be either immaterial, undisputed, or not factual. In light of this, plus plaintiffs' failure to utilize the discovery procedures available to them under the rules of modified procedure in order to pursue their claims of material disputed facts, we believe that the dictates of procedural due process were fully satisfied.

## CONCLUSION

We hold that the Commission's findings are supported by substantial evidence and that the Commission acted within the scope of its statutory authority. This action to enjoin, set aside and annul the Commission's orders is therefore dismissed.