711 F.2d 391
 229 U.S.App.D.C. 113
 ASTRON FORWARDING COMPANY, Cartwright International Van
Lines, Inc., Delcher Intercontinental Moving Service, Inc.,
Dyer International, Inc., Express Forwarding and Storage
Company, Inc., Four Winds Forwarding, Inc., Furniture
Forwarding, Inc., Global International U.S.A., Inc., HC & D
Forwarders International, Inc., Home-Pack Transport, Inc.,
Imperial Van Lines International, Inc., Ivory Forwarding,
Inc., Ocean-Air International, Inc., and Towne International
Forwarders, Inc., Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents.
 No. 82-2029.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued June 3, 1983.
Decided July 12, 1983.
 
 Alan F. Wohlstetter, Washington, D.C., with whom Edward A. Ryan, Washington, D.C., was on the brief, for petitioners.
 Cecelia E. Higgins, Atty., I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, and Lawrence H. Richmond, Deputy Associate Gen. Counsel, I.C.C., and Robert B. Nicholson and Stephen F. Ross, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents. Evelyn G. Kitay, Atty., I.C.C., Washington, D.C., entered an appearance for respondents.
 Before ROBINSON, Chief Judge, and WRIGHT and TAMM, Circuit Judges.
 
 
 1
 Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.
 
 
 2
 J. SKELLY WRIGHT, Circuit Judge:[229 U.S.App.D.C. 114] Petitioners, a group of 14 freight forwarding companies,[1] challenge a decision of the Interstate Commerce Commission (ICC) to grant U.S. Express, Inc. (Express) authority to operate as a freight forwarder of general commodities, including household goods, between various points in the United States.[2] The principal legal issue presented by this appeal is whether ICC may grant an unrestricted forwarding permit without requiring separate evidence of the applicant's fitness to forward household, as well as general, commodities. We conclude that ICC can grant an unrestricted forwarding permit without requiring such evidence. We find, therefore, that ICC's decision to grant Express unrestricted authority is supported by substantial evidence, and we affirm.
 
 I. BACKGROUND
 
 3
 Freight forwarders perform an intermediary function in the transportation industry. They hold themselves out to the general public to provide transportation of property, to consolidate small shipments, to distribute such shipments, and to assume responsibility for transportation from origin to destination. 49 U.S.C. § 10102(8) (Supp. V 1981). Freight forwarders, like most intermediaries, mainly provide administrative services: they consolidate small loads, hire common carriers to transport the consolidated loads, and redistribute the small loads at the points of destination. Freight forwarders principally serve corporations and military units--entities who ship loads of a size that do not justify direct contracting with actual carriers. The freight forwarders make their profits on the differential between the rates paid to carriers and the rates charged to such entities.
 
 
 4
 In November 1981 Express applied to ICC for authority to operate as a freight forwarder of general commodities, including household goods,[3] between points in the United States. See Application For Freight Forwarder Permit, Joint Appendix (JA) 1-5. Express had operated for many years as an international forwarder using air and ocean carriers, but this was its first application to forward freight by rail, motor, and other domestic carriers. See Verified Statement of Applicant, JA 36. Express supported its application with the statements of ten shippers, all of whom testified as to their need for, and Express' ability to provide, the proposed service.[4]
 
 
 5
 Four freight forwarders of general commodities protested Express' application. In addition, petitioners protested the portion of the application that would allow Express to forward household goods. See Verified Statements and Protest, JA 42, 50-61.[5] Petitioners [229 U.S.App.D.C. 115] contended that the supporting shippers had not shown a need to move household goods and that Express had not specifically demonstrated that it was fit, willing, and able to forward such goods. Id. at 5-6, 7-10, JA 54-55, 56-59.
 
 
 6
 On March 8, 1982 a review board appointed by the Commission denied Express' application in its entirety.[6] See Decision of Review Board No. 1 (March 8, 1982), JA 85-88. The review board found that Express had not carried its burden of showing a need for or the ability to provide the proposed service. Id. at 3, JA 87. The board did not discuss or rule on the separate issues that petitioners raised concerning household goods.
 
 
 7
 On appeal a division of three Commissioners reversed the initial review board. See Decision of Appellate Division 2 (May 17, 1982), JA 135-139. The appellate division found that the evidence of record "is sufficiently representative to establish that the broad forwarding service that applicant proposes is required by the shipping public." Id. at 2-3, JA 136-137. Moreover, the division rejected petitioners' request that the grant be restricted against the forwarding of household goods. Id. at 3, JA 137. The appellate division found no ICC precedent or policy requiring such an imposition, and concluded that petitioners have not successfully established that they would be materially harmed by Express' added competition. Id. at 2-3, JA 136-137.
 
 
 8
 On May 17, 1982 petitioners requested that the full Commission reconsider Express' application. See Protestants' Petition for Administrative Review 1-17, JA 141-158. They argued that the division's decision was inconsistent with current ICC policy that restricts the certification of motor carriers against the carriage of household goods where there has been no separate showing of fitness to move such commodities. Id. at 5-6, JA 146-147.[7] They also noted that ICC had recently restricted the permit of a freight forwarder against the forwarding of household goods. Id. at 7-10, JA 148-151.[8]
 
 
 9
 On July 7, 1982 the full Commission denied the request for discretionary review. See Commission Decision 1-2 (July 7, 1982), JA 170-171. The Commission stated that the policy restricting certificates of motor carriers against household goods transportation was properly limited to motor carriers and would not be extended to freight forwarders:
 
 
 10
 The [household goods] exclusion is premised on the fitness issues that might arise because of differences in the carriage of general commodities as opposed to the transporting of household goods. These are primarily operational rather than administrative and do not apply with equal force to the business of forwarding. * * *
 
 
 11
 Id. at 2, JA 171. Furthermore, it decided that the examination of the fitness of household goods forwarders is of "diminished importance in light of the statutory exemption for freight forwarder transportation of 'used household goods.' " Id.[9] Finally, [229 U.S.App.D.C. 116] the Commission expressly overruled any past decisions in which it had restricted the permit of a freight forwarder against the forwarding of household goods:
 
 
 12
 Having considered the issue in full detail, we now believe that an extension of the [household goods exclusion] is unwarranted and inconsistent with a statutory mandate to promote competition and eliminate unproductive regulation.
 
 
 13
 Id. The Commission then concluded that restricting the permits of freight forwarders would unnecessarily "frustrate forwarders from holding out a full range of service to the public." Id.[10]
 
 
 14
 Petitioners then filed this appeal.
 
 II. ANALYSIS
 
 15
 To grant a freight forwarding permit ICC must find both that the public needs and that the applicant can provide the proposed forwarding service. 49 U.S.C. § 10923(a). In this case ICC determined that Express' application met these criteria and that it was "consistent with the public interest and the national transportation policy." See Decision of Appellate Division 2, supra, at 4, JA 138. The ten shippers' statements, together with the evidence in Express' application, adequately support this determination.[11] Therefore, ICC was justified in making the general grant of authority.[12]
 
 
 16
 Petitioners' principal complaint is not with ICC's grant of "general" authority to Express, but rather with ICC's unwillingness to restrict that grant against the forwarding of household goods. They complain that ICC acts arbitrarily and capriciously when it allows a freight forwarder to forward household commodities without offering any specific evidence about the public's need for, or Express' ability to provide, the household goods service. See brief for petitioners at 12-13. But we think that ICC has permissibly determined and fully explained that a separate demonstration of this type is not essential to the granting of a freight forwarding permit. See Decision of Appellate Division 2, supra, at 2-3, JA 136-137.
 
 
 17
 To begin with, ICC has reasonably concluded that, in contrast to the actual transporting of household goods by common carriers, the forwarding of household goods does not require special skills or separate demonstrations of fitness. Freight forwarders do not provide the actual transportation of household goods; licensed motor carriers do.[13] Freight forwarders merely assume the role of shipper; at all times common carriers, subject to requisite fitness showings, provide the actual transportation. Apparently, the only special skill a freight forwarder must have is the ability to choose reputable common carriers. Express, a forwarder with years of experience in hiring the services of air and ocean carriers, clearly [229 U.S.App.D.C. 117] should know how to hire reputable common carriers.[14]
 
 
 18
 Second, ICC has thoughtfully noted that freight forwarders, unlike household goods motor carriers, are not governed by special legislation or regulation. There are no special statutory requirements for freight forwarders of household goods,[15] whereas common carriers are subject to many.[16] Indeed, when Congress recently singled out household goods motor carriers for special legislative treatment, it did not mention or express any concern about household goods freight forwarders.[17] Likewise, while ICC has historically imposed special regulations on household goods carriers, it has always treated freight forwarders less restrictively.[18] ICC requires only that freight forwarders advise shippers of the Commission's jurisdiction and of whom to contact at the Commission for information or assistance.[19]
 
 
 19
 Finally, ICC has persuasively argued that requiring applicants to make special showings of fitness to forward household goods would unnecessarily reduce competition in the industry.[20] Requiring only a general demonstration of fitness allows those who are so certified to provide a wider range of forwarding services, and thereby to increase the choices available to shippers and the competition among forwarders.[21] By contrast, requiring applicants to show their fitness to forward household goods would erect a barrier to entry into the industry, thereby reducing the services available to shippers and insulating existing forwarders from new competition.
 
 
 20
 In sum, ICC had substantial evidence on which to determine Express' fitness, willingness, and ability to forward all commodities, including household goods. ICC's decision not to restrict Express' permit against the forwarding of household goods was a reasonable exercise of its discretion.
 
 III. CONCLUSION
 
 21
 Once an applicant demonstrates its fitness to provide the proposed forwarding service, ICC will grant the permit unless the protesting forwarders show that they will be materially harmed by the new competition. Smith World-Wide Movers, Inc., Freight Forwarder Application, 337 ICC 721, 737 (1970). Here, ICC determined that Express' competition would not materially affect petitioners and that its entrance into the industry would promote efficiency and consumer choice. See Decision of Appellate [229 U.S.App.D.C. 118] Division 2, supra, at 3-4, JA 137-138. Having made all the findings required of it, ICC approved the Express application. Accordingly, the Commission's decision is
 
 
 22
 Affirmed.
 
 
 
 [1]
 Astron Forwarding Company, Cartwright International Van Lines, Inc., Delcher Intercontinental Moving Service, Inc., Dyer International, Inc., Express Forwarding and Storage Company, Inc., Four Winds Forwarding, Inc., Furniture Forwarding, Inc., Global International U.S.A., Inc., HC & D Forwarders International, Inc., Home-Pack Transport, Inc., Imperial Van Lines International, Inc., International Export Packers, Inc., Ivory Forwarding, Inc., Ocean-Air International, Inc., and Towne International Forwarders, Inc. were protestants before the ICC. International Export Packers, Inc. has chosen not to be a petitioner in this appeal
 
 
 [2]
 49 U.S.C. § 10923(a) (Supp. V 1981) provides that the Commission may issue a freight forwarder permit if it finds that:
 (1) the person is fit, willing, and able--
 (A) to provide the transportation or service to be authorized by the permit; and
 (B) to comply with this subtitle and regulations of the Commission; and
 (2) the transportation or service to be provided under the permit is or will be consistent with the public interest and the transportation policy of section 10101 of this title.
 
 
 [3]
 49 U.S.C. § 10102(10) defines "household goods" to include (1) personal effects and property to be used in a dwelling and such other similar property as the Commission may provide by regulation, and (2) furniture, fixtures, equipment, and property of stores, offices, and other similar establishments
 
 
 [4]
 See Appendix to Application for Freight Forwarder Permit, JA 6-35. The shippers described the various commodities they would ship and the destination points for those shipments. Id. at 3, 6, 12, 15, 18, 21, 24, 27, 30, JA 8, 11, 17, 20, 23, 26, 29, 32, 35. At least three shippers stated the need to ship "between [all] points in the United States." Id. at 2, 5, 8, JA 7, 10, 13
 
 
 [5]
 Petitioners joined with the four general commodity forwarders in challenging ICC's decision to grant Express authority to move general commodities as well. The four general commodity forwarders are not, however, party to this appeal
 
 
 [6]
 Pursuant to 49 U.S.C. §§ 10304-10305 the Commission may delegate its power to render decisions to boards composed of at least three employees. ICC did so in this case
 
 
 [7]
 The Commission's policy is published at 47 Fed.Reg. 13603 et seq. (March 31, 1982). The Commission adopted this policy to comply with the Fifth Circuit's mandate in American Trucking Ass'ns, Inc. v. ICC, 659 F.2d 452 (5th Cir.1981). In that case the Fifth Circuit held that applications for authority as a motor carrier to transport household goods must be supported by specific evidence regarding the applicant's fitness, willingness, and ability to render such service. Id. at 473. The Fifth Circuit was impressed by ICC's historic regulation of motor carrier transport of household goods and was concerned that, without a special showing, ICC would be unable to enforce recent enactments of Congress designed to protect consumers in the transport of household goods. Id. at 465-467
 
 
 [8]
 See Atlas Consolidated Container, Inc., Freight Forwarder Application, ICC Docket No. FF-573 (May 10, 1982), reprinted in Appendix B of brief for petitioners
 
 
 [9]
 See 49 U.S.C. § 10562(2)(D). This statutory exemption allows freight forwarders who restrict their service solely to forwarding household goods (and who do not transport general commodities or commodities allied with household goods) to engage in the business without even applying to ICC for a general permit. Id
 
 
 [10]
 In 1980 Congress enacted three acts to promote competition and to reduce regulation in the transportation industry. See Motor Carrier Act of 1980, Pub.L. No. 96-296, 94 STAT. 793; Staggers Rail Act of 1980, Pub.L. No. 96-448, 94 STAT. 1895; Household Goods Transportation Act of 1980, Pub.L. No. 96-454, 94 STAT. 2011
 
 
 [11]
 See note 4 supra. There is no merit to petitioners' suggestion that ICC should have limited Express' authority to certain commodity classifications. See brief for petitioners at 25. The commodities at issue cover a broad range of items, and one shipper expressly identified a need to ship general commodities, see Appendix to Application for Freight Forwarder Permit, JA 19
 
 
 [12]
 A freight forwarder need only demonstrate that its service will be "consistent with the public interest." Yellow Forwarding Co. v. ICC, 369 F.Supp. 1040, 1045 (D.Kan.1973). This is an easier demonstration to make than is the "public convenience and necessity" showing required of common carriers. Id.; see also Airport Shuttle Service, Inc. v. ICC, 676 F.2d 836 (D.C.Cir.1982); C & H Transportation Co. v. ICC, 589 F.2d 565 (D.C.Cir.1978), cert. denied, 440 U.S. 911, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979)
 
 
 [13]
 See Freight Forwarder Restrictions, 132 MCC 832 (1982), petition for review pending sub nom. Global Van Lines, Inc. v. ICC, 11th Cir. No. 82-4284
 
 
 [14]
 See Appendix to Application for Freight Forwarder Permit, JA 17, 20, 23, 29, 32, 35. Petitioners contend that forwarding household goods requires special services--such as packing and unpacking, appliance serving, and storage-in-transit--that may not be involved in forwarding general commodities. Brief for petitioners at 17-19. This may be correct, but it is beside the point. The difference between shipping household goods and general commodities takes on importance, for purposes of the present case, only in relation to the measures needed to protect consumers. See American Trucking Ass'ns, Inc. v. ICC, supra note 7, 659 F.2d at 465-468. Apparently, the military and large corporations are the major customers of household goods forwarders, and they have sufficient economic leverage to protect themselves
 
 
 [15]
 See note 9 supra
 
 
 [16]
 See, e.g., 49 U.S.C. §§ 10730(b), 10922(b)(4), and 10924(b)
 
 
 [17]
 See Household Goods Transportation Act of 1980, Pub.L. No. 96-454, 94 STAT. 2011; H.R.Rep. No. 96-1372, 96th Cong., 2d Sess. (1980); S.Rep. No. 96-647, 96th Cong., 1st Sess. (1979), U.S.Code Cong. & Admin.News 1980, p. 4271
 
 
 [18]
 See, e.g., Freight Forwarders of Household Goods Regulation, 344 ICC 862, 865 (1974); Investigation Into Status of Freight Forwarders, 339 ICC 711, 805-806 (1971)
 
 
 [19]
 See 49 C.F.R. § 1085 (1982)
 
 
 [20]
 ICC openly overruled all prior decisions expressing contrary policy because of the differences between household goods carrying and forwarding, the special regulations and legislation concerning carriers, and the new desire to promote competition. See Commission Decision at 1-2, JA 170-171. This is the kind of open and honest decisionmaking courts must encourage
 
 
 [21]
 For example, a manufacturer that uses a particular freight forwarder for forwarding general commodities may also use that forwarder for forwarding the household goods of employees that it transfers