**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants.

No. 46525.

United States District Court
N. D. California.

Aug. 14, 1968.

R. C. Stetson, J. R. Hagan, Menlo Park, Cal., for plaintiff.

George R. LaBissoniere, Seattle, Wash., for intervening defendants.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for the United States.

Robert W. Ginnane, Gen. Counsel, Nahum Litt, Atty., I. C. C., Washington, D. C., for the I. C. C.

Before HAMLIN, Circuit Judge, and ZIRPOLI and CARTER, District Judges.

## MEMORANDUM AND ORDER AFFIRMING DECISION OF INTERSTATE COMMERCE COMMISSION

OLIVER J. CARTER, Judge:

This is an appeal seeking judicial review of an order of the Interstate Commerce Commission (hereinafter the Commission) granting in part and denying in part to plaintiff Consolidated Freightways Corporation of Delaware (hereinafter Consolidated) authority to perform freight carrying services (by truck) in the state of Alaska.

The history of the case begins with the statehood of Alaska which brought to Alaska regulation of interstate commerce by the Interstate Commerce Commission for the first time. Most commerce to Alaska travels by ship from west coast ports of the lower states to one of the major ports of Alaska and then by truck or by train and truck to the final destination. The commerce from Alaska to the states follows the same route in reverse. Some goods are transported by truck the entire way to Alaska over the Alcan highway.

The order of the Commission limited plaintiff's authority in Alaska to trucking between only two Alaskan ports, Seward and Valdez on one hand and points in Alaska (except south of Yakutat) on the other. Plaintiff was also granted permission to carry goods between Seattle and points in Alaska (with the same exception) by the overland route. Plaintiff was denied authority to carry interstate goods between other ports (such as Anchorage and Whittier) and points in Alaska.

Following statehood and the requirement that truckers seek Interstate Commerce Commission authority, there were two ways for plaintiff to obtain the desired authority. One was through grandfather authority which permitted a trucker to continue to operate over any route for which he had been providing actual service prior to and subsequent to August 1958. The second way was to apply for authority under the public convenience and necessity requirement from the Interstate Commerce Commission under 49 U.S.C. § 307.

Under plaintiff's grandfather application, which was heard and determined first, plaintiff was only able to obtain routes identical to those for which it was later granted the permanent authority described above (although the permanent authority added several kinds of goods which could be carried to those listed in the grandfather authority). The grandfather decision of the Interstate Commerce Commission is final and not in dispute here.

Plaintiff also applied for permanent authority under 49 U.S.C. § 307 to operate between "points in Alaska". Pending the final outcome of this application, it applied for and was granted temporary authority to operate "between points in Alaska" and has operated under this temporary authority to the present time.

Plaintiff's application for permanent authority was not heard until February and October 1965. Between August 1958 and the hearings it built up a record of shipping experience under the temporary authority on routes other than those included in the grandfather authority and the order of the Commission granting permanent authority.

At the hearings on the application for permanent authority plaintiff offered two basic kinds of evidence on the issue of public convenience and necessity for the additional routes. The first was the testimony of shippers who had used plaintiff's services, who were satisfied with the service, and who would miss it if it were discontinued. The second kind of evidence was abstracts of the shipments of plaintiff between 1961 and 1964. These abstracts were introduced at the hearings before the Commission as Exhibits 10, 12 and 13, and are attached to plaintiff's opening brief as Exhibit C. Plaintiff contends that the abstracts list a number of shipments carried by plaintiff outside, for the most part, the permanent authority granted it. It is the treatment accorded these abstracts by the Commission in reaching its decision on the application for permanent authority that forms the basis for one of the issues in this appeal.

Plaintiff argues, and the defendants do not dispute, that the carrying of shipments, as represented by the abstracts, which were beyond the grandfather and permanent authority is relevant and probative evidence of the public convenience and need for the additional permanent authority sought by plaintiff. Plaintiff argues further that in its decision the Commission improperly treated this evidence as irrelevant.

Alternatively it is argued that the Commission failed to indicate whether or not it felt the evidence was relevant or what weight it deserved on the issue of the public convenience and necessity for plaintiff's additional authority. In other words it is argued that the Commission failed to state its opinion as to the relevancy of the interim shipments to the issue of public convenience and necessity and failed to state (assuming it found the shipments relevant) what weight should be accorded them on that issue. This is alleged to be a failure to make a finding on material issues of fact and law in violation of Section 8(b) of the Administrative Procedure Act, 5 U.S.C. § 557(c):

> "The record shall show the ruling on each finding, conclusion, or exception presented. All decisions * * * are a part of the record and shall include a statement of
>
> > (A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; * * * *"

The following portions of the Commission's decision bear on the issues framed by plaintiff's contentions.

## "REPORT OF THE COMMISSION

\* \* \* \* \*

"On exceptions [to the examiners' decision] applicant contends that the record establishes a need, in addition to the recommended grant, for the transportation of general commodities between points in Alaska and that the examiners basically erred in ignoring its long-standing past operations; " * * *

"[In their joint reply, the opposing carriers] argue that applicant's past operations were presented unsuccessfully for corresponding rights in its Alaska 'grandfather' proceeding and are no more probative herein; that the more recent operations under temporary authority are not presumptive or evidentiary of any permanent need; that most of the shippers' traffic can be handled under applicant's existing authority and the rights recommended herein; and that the protestants can adequately transport more traffic than is now available.

\* \* \* \* \*

"Evidence of its operations under temporary authority was introduced in the form of several abstracts of shipments. With respect to interstate movements between points in Alaska, the abstracts show 18 shipments of explosives from May 1, 1963 to August 27, 1964, 135 shipments requiring special equipment from February 23, 1961 to November 27, 1964, and 235 shipments of general commodities from July 26, 1961 to December 4, 1964." Consolidated Freightways Corporation of Delaware, Extension— Alaska, 103 M.C.C. 664, 665–667 (1966); Appendix A to Complaint, 3 & 4.

## "DISCUSSION AND CONCLUSIONS

\* \* \* \* \*

"Applicant, however, has not met its evidentiary burden of showing that public convenience and necessity require the service it offers and to some extent has performed in the past for the supporting shippers between points in Alaska. Its operations under temporary authority demonstrate its operating ability, the quality of service, and the nature and pattern of distribution of some of the involved traffic. The holding of such temporary authority, under the express terms of section 210a(a) of the Interstate Commerce Act does not create a presumption that corresponding permanent authority will be granted.

"We have carefully reviewed the evidence, including those portions not discussed by the examiners and conclude that the supporting shippers' traffic can be adequately handled under applicant's present authority, including the rights approved herein and the service available from the opposing carriers. A substantial portion of the shippers' traffic has and would

by the preference of several shippers, be handled by applicant under a through bill of lading from Seattle. Such through movements, of course, provide a flexibility as to the port through which a shipment is routed. * * *

"The five opposing carriers hold either appropriate regular-route authority covering the pertinent areas of the sparsely populated State or broad irregular-route operations, such as performed by Weaver. As evinced by shipper testimony and protestants' idle equipment and limited operating revenue, most of the shippers have not adequately exploited the service available, partly because of inadequate investigation by shippers and partly because of ineffective or limited solicitation by the protestants. When used, the operations of the protestants, however, either singly or severally are not shown to be inadequate, and over all appear to provide a service which has satisfactorily met the shippers' needs. We believe that the opposing carriers should be allowed to participate to the extent of their ability in the traffic flowing between points in Alaska and that applicant has failed to convincingly show a valid public need for the additional service proposed." Consolidated Freightways Corporation of Delaware, Extension—Alaska, supra, 103 M.C.C. at 680 and 681; Appendix A to Complaint, at 21–23.

"BOARD MEMBER MILLS, DISSENTING IN PART:

"I am unable to agree with the majority that the record fails to support a grant of authority to transport general commodities throughout that part of Alaska north of Yakutat Bay. Applicant has been a part of the transportation picture in Alaska for a number of years. Hence, in measuring the adequacy of existing service, I think its past service should be given greater weight than was accorded by the majority." Consolidated Freightways Corporation of Delaware, Exten-

sion—Alaska, supra, 103 M.C.C. at 682; Appendix A to Complaint, 24.

It is apparent from the portions of the decision of the Commission quoted above that plaintiff's argument is narrow and technical in nature.

■ Plaintiff's first point, that the Commission expressly found the abstracts irrelevant to the issue of public convenience and necessity, is simply without support in the record. The Commission merely noted that the holding of a certificate of temporary authority, by law, cannot be considered presumptive of public convenience and necessity.

Plaintiff's alternative point, that the Commission failed to make adequate findings on the relevance of the abstracts, runs as follows. Plaintiff argues that the abstracts represent a substantial portion of the evidence submitted to the Commission on the subject of public convenience and necessity for plaintiff's proposed additional service. From this it argues that if the Commission did ignore this evidence in reaching its decision and gave no explanation for ignoring it, it would be neither within the spirit nor the letter of the requirements of Section 8(b) of the Administrative Procedure Act.

Plaintiff argues further that it can be inferred that the Commission ignored plaintiff's abstracts on the issue of public convenience and necessity from the following: Plaintiff notes first that in the second paragraph under the heading DISCUSSION AND CONCLUSION of the decision of the Commission, the Commission mentions the "operations under temporary authority" and discusses its relevance to plaintiff's operating capability but not its relevance to the public convenience and necessity of shippers. 103 M.C.C. at 679; Appendix A to Complaint at 21. Next plaintiff notes that the Commission then deals with the effect of the mere holding of temporary authority and correctly recites the statute. 103 M.C.C. at 680; Appendix A to Complaint at 21. Plaintiff notes fur-

ther that in the following paragraphs the references to the evidence of past operations and their relevance and weight refer exclusively to supporting shippers, either by that term or by name. 103 M.C.C. at 680, 681; Appendix A to Complaint at 21–23. It is apparently plaintiff's position that since the abstracts do not name any of the shippers of the shipments listed, it can be inferred that the Commission did not have these abstracts in mind during the discussion described above and therefore did not consider them in reaching its decision.

From the evidentiary importance plaintiff attaches to the abstracts, from the lack of express findings on their relevance by the Commission, and from the above described inferences plaintiff would draw, plaintiff would have this Court conclude that the Commission failed to make a finding on a material issue. Plaintiff argues that the significance of this failure is that there is no way to be sure that the Commission did not find the evidence to be irrelevant, a finding that plaintiff argues would be improper in view of the Commission's long, past practice of considering such evidence relevant.

■ Running against plaintiff's position are the following considerations: To begin with plaintiff's projection of irregularity runs counter to the presumption of administrative regularity at the time of judicial review. I. C. C. v. Jersey City, 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Waite v. United States, 161 F.Supp. 856, 860 (W.D.Pa.1958).

A second reason for not projecting some irregularity from the failure to make an explicit finding is that plaintiff did not place much emphasis on this aspect of the abstracts prior to the Commission's adverse ruling. Plaintiff's exceptions to the report of the examiners did not object to the failure to decide the relevancy of the abstracts, and did not suggest that the abstracts were of any special significance not already accorded them. It was not until the peti-

tion for reconsideration before the Commission that plaintiff made explicit the importance it attached to the abstracts of shipments. Also at no time did the opposing carriers ever argue that plaintiff's past service was irrelevant to the public convenience and necessity issue, and as noted above at no time did the Commission expressly indicate that it felt the evidence to be so. Thus the general presumption that the Commission acted regularly and properly and the above described failure of the plaintiff to focus attention on the issue prior to the Commission's decision indicate that plaintiff has little basis for suggesting to this Court that the Commission may have improperly felt the evidence was irrelevant.

In addition the significance of the abstracts as evidence of past experience in the area of authority denied plaintiff is doubtful. As admitted by plaintiff in its reply brief, up to one third of the shipments could have been on a through Consolidated Freightways bill of lading from Seattle allowing plaintiff to select one of the two ports from which it still has authority to carry goods to points in Alaska. While plaintiff's witness, through whom the exhibits were introduced, characterized the listed shipments as "representative" shipments, the total volume of such shipments was never indicated and never compared to the total commerce in that area or the slack capacity of protesting carriers. Also since the abstracts do not list the names of the shippers of each shipment, there is no way to know to what extent the abstracts are a duplication of the verbal testimony of the twenty-nine supporting shippers. These ambiguities are due solely to plaintiff's own failure to give concrete definition to the meaning of the shipments listed in the abstracts. For this Court to ask the Commission to spell out what consideration it gave these exhibits, as requested by plaintiff, might very well be asking the impossible in view of their nebulous nature.

Finally plaintiff's attack on the sufficiency of the findings is weak. The

Commission, at least implicitly, did in general treat with all the prior shipments of plaintiff. It is clear that the Commission was aware of these abstracted shipments, and it did make a finding that the volume of all the prior shipments was such that it could be adequately handled by protestants and plaintiff under the authority granted it (i. e. where plaintiff had the power to direct through Seward or Valdez shipments previously directed through some other port).

"We have carefully reviewed the evidence, including those portions not discussed by the examiners and conclude that the supporting shippers' traffic can be adequately handled under applicant's present authority, including the rights approved herein and the service available from the opposing carriers." *Consolidated Freightways Corporation of Delaware, Extension—Alaska, supra,* 103 M.C.C. at 680; Appendix A to Complaint at 21 and 22.

Thus, whether or not the Commission sufficiently dealt with the specific issue raised by plaintiff depends on how literal the Commission is required to be by the Administrative Procedure Act in setting forth its decision. Below are quotations from two representative cases which discuss what is a sufficient finding and what kinds of issues are material.

" * * * the requirements of the Administrative Procedure Act are fundamental to due process and * * * all administrative decisions shall include such findings and conclusions as are reasonably necessary to intelligently inform the parties involved of the purport thereof, as well as the reasons therefor." *Bell Lines, Inc. v. United States,* 263 F.Supp. 40, 46 (S. D.W.Va.1967).

"The mandate of § 8(b) of the Administrative Procedure Act for reasoned findings and conclusions on all material issues should not be read as requiring agencies to deal in a detailed way with every possibility no matter how unlikely, or as directing a reviewing court to close its eyes to realities in pursuit of academic perfection." *Erie-Lackawanna R.R. Co. v. United States,* 279 F.Supp. 316, 351 (S.D.N.Y.1967).

■ Under these criteria and weighing the other factors discussed above, this Court concludes that there were adequate, express findings by the Commission on the basic issues before it, namely, whether there was public convenience and necessity for plaintiff's proposed service and the extent of the ability of plaintiff and its competitors to handle the demands of the shippers.

Plaintiff makes two additional arguments that are related to each other. First plaintiff argues that the Commission cannot refuse to grant a certificate of authority unless it finds that with regard to the service in question "* * * the protestants could meet the shippers' needs at all times if Consolidated's [past] service were eliminated." Plaintiff's Brief, 26. Second plaintiff argues that the Commission denied plaintiff's application because it improperly required plaintiff to prove that the service of the opposing carriers was inadequate. The basis for these two arguments comes from one sentence in the Commission's decision:

"When used, the operations of the protestants, however, either singly or severally are not shown to be inadequate, and over all appear to provide a service which has satisfactorily met the shippers' needs." 103 M.C.C. at 681; Appendix A to Complaint at 23.

■ Plaintiff cites no authority for its first proposition except for the general requirement of the Administrative Procedure Act that the Commission make findings on all material issues. However, by giving the Commission any benefit of the doubt such a finding is implicit in its DISCUSSION AND CONCLUSION. Plaintiff's second argument is an attempt to set up a straw man by

placing one sentence out of context and giving it a strained interpretation and then knocking it down. The DISCUSSION AND CONCLUSION discusses the failure of plaintiff to prove inadequacy of opposing carriers in relation to a number of other facts which all together convince the Commission that granting the proposed service would not best serve the public convenience and necessity.

Accordingly, the contentions of plaintiff lack sufficient merit to require that the case be sent back to the Commission for clarification, and it is ordered that the decision of the Commission be, and the same is hereby affirmed.