BREDEHOEFT PRODUCE COMPANY, INC., et al., Plaintiffs,

v.

UNITED STATES of America and the Interstate Commerce Commission, Defendants,

v.

WILLIS SHAW FROZEN EXPRESS, INC., Intervenor.

No. F-72-C-51.

United States District Court, W. D. Arkansas, Fayetteville Division.

May 20, 1974.

Edward T. Lyons of Jones, Meikle-john, Kehl & Lyons, Denver, Colo., Harper, Young & Smith, Fort Smith, Ark., for plaintiffs.

John H. D. Wigger, Dept. of Justice, Washington, D. C., Robert E. Johnson, U. S. Atty., Ft. Smith, Ark., Theodore C. Knappen, ICC, Washington, D. C., for defendants.

James B. Blair of Crouch, Blair, Cypert & Waters, Springdale, Ark, for intervenor.

Before BRIGHT, Circuit Judge, and WILLIAMS and MILLER, District Judges.

## OPINION

JOHN E. MILLER, Senior District Judge.

Plaintiffs, Bredehoeft Produce Company, Inc., (Bredehoeft), an Arkansas corporation, and Bray Lines Incorporated (Bray), an Oklahoma corporation, are common carriers by motor freight engaged in interstate commerce pursuant to authority issued by the Interstate Commerce Commission (ICC). The plaintiff Allen Canning Company (Allen) is an Arkansas corporation engaged in the business of processing and canning both food products and dog food which is marketed throughout the United States.

Bredehoeft and Bray are presently operating under temporary authority granted by the ICC to engage in certain designated motor common carrier operations pending the final determination of the applications for corresponding permanent authority.

On June 5, 1970, Bray filed its application in MC–112822 (Sub-No. 161)

seeking authority to transport canned goods and dog food from five canning plants then being operated by Allen, located approximately 8 miles northeast of Siloam Springs, and at Gentry and Siloam Springs, Ark., and Proctor and Kansas, Oklahoma, to points in Calif., Kansas, N.M., Ore., Texas and Wash.

Subsequently on August 12, 1971, it filed an additional application (Sub-No. 209) for authority to serve over irregular routes additional plants of Allen located in Crawford County, Ark., to points in the United States, except Alaska and Hawaii.

On April 9, 1971, Bredehoeft filed its application in MC–127028 (Sub-No. 6) for authority to transport canned goods and dog food from five canning plants of Allen, located at Gentry, Siloam Springs, and at a point approximately 8 miles east of Siloam Springs, Ark., and at Kansas and Proctor, Okla., to points in Ariz., Colo., Conn., Del., Idaho, Ill., Ind., Iowa, Maine, Mass., Mich., Minn., Miss., Mo., N.Y., N.D., Okla., R.I., S.D., Utah, Vermont, Wisc. and Wyoming, and the District of Columbia, restricted to the transportation of traffic originating at the named plant sites of Allen.

Subsequently on August 13, 1971, it filed an additional application (Sub-No. 12) for authority to serve additional sites of Allen located in Crawford County, Ark., over irregular routes to points in the United States, except Alaska and Hawaii.

Protests were filed by various protestants against Bray MC 112822 (Sub-No. 161 and Sub. No. 209) and Bredehoeft MC 127028 (Sub-No. 6 and Sub. No. 12). Following the filing of the protests, the Commission decided to consolidate the above applications with other applications and to dispose of the applications under the modified procedure.

The rules governing the modified procedure for the ICC appear in 49 C.F.R., §§ 1100.1 to 1100.250. Sec. 1100.45(a) (Rule 45), provides that modified procedure will be ordered in a proceeding upon the Commission's initiative or upon its approval of a request filed by any party that the modified procedure shall be observed.

Subsection (b) provides that an order directing modified procedure will list the names and addresses of the persons who at that time are parties to the proceedings, and direct they comply with the modified procedure rules.

Section 1100.49(a) (Rule 49) provides:

"A statement filed under the modified procedure after that procedure has been directed shall state separately the facts and arguments and include the exhibits upon which the party relies. If no answer has been filed pursuant to the waiver provision of Rule 46, defendant's statement must admit or deny specifically and in detail each material allegation of the complaint. In addition, defendant's statement and complainant's statement in reply shall specify those statements of fact and arguments of the opposite party to which exception is taken, and include a statement of the facts and arguments in support of such exception. Complainant's statement of reply shall be confined to rebuttal of the defendant's statement."

The Commission entered an order on each application similar to the following:

"IN THE MATTER OF DIRECTING MODIFIED PROCEDURE IN THE ABOVE–ENTITLED PROCEEDING. PRESENT: Rupert L. Murphy, Commission, to whom the matter which is the subject of this order has been assigned for action thereon.

"Upon consideration of the record in the above-entitled proceeding; and good cause appearing:

"*It is ordered*, That this proceeding be handled under modified procedure; and that the parties hereto or their representatives comply with the provisions of Rule 247(e)(3) of the Commission's Rules of Practice.

"*It is further ordered,* That September 13, 1971, be, and it is hereby, fixed as the date on or before which applicant may submit verified statements in support of the application (including appropriate evidence to establish applicant's fitness and ability, financially and otherwise, properly to perform the operations proposed).

"*It is further ordered,* That October 13, 1971, be and it is hereby, fixed as the date on or before which protestants may file verified statements in opposition to the application, and October 26, 1971, be, and it is hereby fixed as the date on or before which applicant may file verified statements in reply.

"*It is further ordered,* That a copy of each statement filed with the Commission shall be served on all parties of record, shown in the appendix hereto, and the statement filed with the Commission shall so certify.

"*And it is further ordered,* That, except for good cause shown, preliminary motions and requests for cross-examination of witnesses or for other relief will not be acted upon prior to the date on or before which all verified statements are required to be filed.

"Dated at Washington, D. C., this 19th day of July, 1971."

A notice accompanied the order further outlining and explaining the procedure.[1]

Upon the completion of the modified procedure, the first application of Bray (Sub-No. 161) and the first application of Bredehoeft (Sub-No. 6), together with an application of Nationwide Carriers, Inc., B. J. Adams, Inc., and Jenkins Truck Lines, Inc., under the lead docket and caption No. MC 61592 (Sub-No. 200), Extension—Gentry Canned Goods, were consolidated and submitted to Review Board No. 3 of the Commission, which denied on April 4, 1972, each of the above five applications (Ex. A to Complaint).

On May 18, 1972, the second application, MC 127028 (Sub-No. 12), Bredehoeft, and the second application, MC 112822 (Sub-No. 209), Bray, were considered by the same Review Board which denied both applications.

Following the denial of the applications of Bredehoeft and Bray, they filed

---

[1]. "Each verified statement, whether in support of or in opposition to the application, should state with clarity and precision the position of the person signing it. It should include all the pertinent facts personally known by that person. Conjecture, unsupported opinion, and vague or generalized statements should be avoided.

"Applicant should include with its initial verified statement a copy of its pertinent operating authority, a recent financial statement, and a description of the equipment to be used in the proposed operation, and evidence regarding its method of insuring compliance by its employees with the Commission's safety and other regulations.

"Those supporting the application should state with specificity the transportation service which they believe to be required.

"Shippers and consignees supporting applications for authority to transport property should identify clearly the commodities they ship or receive, the points to or from which their traffic moves, the volume of freight they would tender to applicant, the transportation services now used for moving their traffic, and any deficiencies in existing services.

"Those supporting an application for authority to transport passengers should indicate the frequency with which they would use the proposed service and should identify any transportation services now available and the inadequacies believed to exist in such services.

"Protestants should submit with their verified statements copies of their pertinent operating authorities and should indicate specifically the portions relied upon in support of their protests, as well as the manner in which they provide or would provide the services being proposed—whether by tacking, interline, or other means.

"Applicant's rebuttal statement cannot be used to introduce new evidence not referred to in its initial statement, but must be confined to answering points raised by protestants in their reply statements.

"Collectively the verified statements of each party should contain the same evidence which would be submitted if an oral hearing were held in the proceeding."

a petition for reconsideration and an alternative petition to reopen records to receive tendered verified statements or for oral hearing.

Willis Shaw, a protestant, filed a reply to the plaintiffs' petitions for reconsideration, in which it denied that the orders complained of were unlawful, unreasonable, arbitrary or capricious and constitute an abuse of discretion; that said orders did not and do not deny any constitutional rights to the plaintiffs and all orders were supported by the evidence and plaintiffs have not been denied a fair hearing and procedural due process.

On October 25, 1972, in the consideration of the petition for reconsideration, etc., the Commission, Division 1, acting as an Appellate Division, reviewed all the proceedings relative to the questions now before the court and denied the motion and other pleadings, and further rejected the tendered verified statements for the reason that having been thoroughly examined, acceptance of such statements would not warrant a result different from that reached by the Review Board, "and no sufficient or proper cause appears for reopening the proceeding for reconsideration, further hearing, oral hearing, or for granting any of the other relief sought."

The complaint of plaintiffs was filed on December 29, 1972.

A three-judge court was designated January 3, 1973.

The temporary restraining order was issued December 29, 1972, and extended by stipulation until the final determination of the cause by the court.

On February 1, 1973, Willis Shaw, with permission of the court, also filed its petition to intervene under Rule 24, Fed.R.Civ.P.

In paragraph IX of the intervention it is alleged:

"Intervenor denies paragraph V. of the plaintiffs' complaint and denies that any irreparable damage is occurring to the plaintiffs but rather states that irreparable damage is occurring to this intervenor by the unwarranted, unnecessary and unneeded new competition which the plaintiffs have instigated with this defendant under temporary authority issued by the Interstate Commerce Commission and that since the Interstate Commerce Commission has found no need for the permanent authority, that the temporary authority should be terminated; that the plaintiffs are operating under temporary authority, taking away revenues from this intervenor which would allow this intervenor to properly function and perform transportation services authorized to it by the Interstate Commerce Commission."

On March 1, 1973, the defendants United States and ICC filed their joint answer to the complaint, and in paragraph II alleged:

"With regard to paragraph IV, defendants admit that plaintiffs filed a petition for reconsideration which was denied by the Commission and that plaintiffs have exhausted their administrative remedies, but deny all allegations of error contained in this paragraph and all of its various subparagraphs. Defendants deny that the decisions and orders of the Commission are unlawful for any of the reasons therein alleged or for any other reason."

Jurisdiction is granted by 28 U.S.C. §§ 1336, 2284, and 2321–2325, incl., together with 49 U.S.C. § 305(g)(h) and Sec. 17.

Plaintiffs Bredehoeft and Allen are residents of and maintain their principal offices and places of business in Benton County, Arkansas, and venue is granted by 28 U.S.C. § 1398.

In the complaint the plaintiffs alleged that the decisions and orders of the Commission are unlawful, unreasonable, arbitrary, capricious, constitute an abuse of discretion and operate to deny plaintiffs' rights guaranteed under the Constitution of the United States in the following respects: the decisions and orders violate the provisions of the Ad-

ministrative Procedure Act, 5 U.S.C. § 551 et seq.; the orders are not supported by evidence and are in fact contrary to the evidence; that plaintiffs have been subjected to substantial prejudice by the retroactive consolidation and denial of the applications of the plaintiffs and have been denied a fair hearing and procedural due process of law; that the order denying plaintiffs' alternative petition to reopen the records in the proceedings before the Commission for the receipt of additional tendered evidence, or in the alternative to grant an oral hearing, was an abuse of discretion and is unlawful and denied plaintiffs due process of law; that said orders are arbitrary and capricious and without foundation in the evidence, ignore and discount the probative value of the plaintiffs' evidence; that said orders are inconsistent and contradictory on their face and without a rational basis and "so lacking in essential clarity of expression as to leave the plaintiffs without guidance as to why their cause failed and as to the standards to be applied by the Commission in future causes of this nature."

In evaluating plaintiffs' claims, we turn first to an examination of the Commission's procedures on the consolidated hearings involving plaintiffs and other carriers as well as the subsequent proceedings relating to each of the plaintiffs.

The consolidated applications were referred by the Commission to Review Board No. 3, members Bilodeau, Beddow and Grossman, which Board on May 16, 1972, served its report of April 4, 1972. The first paragraph of the report which is attached to the complaint with Exhibits A, B, C and D to plaintiffs' complaint states:

"The modified procedure has been followed and the matters have been assigned to the Board for disposition. Because these five applications involve related issues, they have been consolidated and will be disposed of in a single report."

In Appendix A attached to the report is set forth the titles of all the applicants, the domicile of each, the date of each application, and the authority sought by each in the consolidated hearing.

Appendix C contains the titles of the protestants, a statement of the applications opposed and by whom, the authorities in conflict, and the contentions. The Board found that three protestants, Hilt, Shaw and Interstate, collectively can perform most of the total service the shipper, Allen, seeks in the applications supported by it and also found that each of the protestants had solicited the traffic; that Shaw alone is authorized to perform more than 75 percent of the total proposed service, and in fact derives substantial revenue from serving the shipper. Three of the protestants operate wholly in Texas and their protest is based upon interline agreements with carriers not participating in these proceedings.

After setting forth the information applicable to each applicant and protestant, the Board stated:

"Although we generally prefer to summarize the evidence presented by each applicant, we will not do so in this proceeding due to the voluminous nature of the evidence and the absence of any material dispute pertaining to such information. Such evidence has been received and will receive full and proper consideration."

Upon such consideration the Board stated that Allen is engaged in the production and distribution of a variety of canned goods designed for human consumption as well as canned and packaged animal food. At that time it was operating plants at five locations heretofore set forth, and shipped from the five plants a weekly total of between 60 and 80 truckloads of products. That in support of the contentions Allen stated its marketing and distribution practices are such that it requires the services of motor common carriers capable of making multiple pickups at the involved origin

facilities and multiple deliveries throughout the requested destination territory. That it is using available carriers to the extent of their authorities, and that existing carriers, including the applicants generally do not have sufficient equipment or appropriate authority to render the complete flexible service it requires, and therefore it is necessary for it to transport a sizable volume of its products in its own trucks.

The Board found that the supporting shipper, Allen, had given very little specific information on which to base a decision; that the only specific evidence in the shipper's verified statements is a listing of representative points to which shipments have been made and total tonnages from its five origin facilities collectively to each sought state; that the shipper's tonnage figures lose a great deal of its significance when it is realized that the shipper has submitted the same total statistics separately in support of each application; that there is a complete lack of any indication by the shipper in four of the proceedings as to the volume of traffic to be tendered to each respective applicant; that it fails to indicate the approximate volume originating at each facility, and does not offer examples of any representative combinations and the evidence does not establish that existing service available has been fully utilized or is inadequate.

The Board held that the existing authorized carriers should have the right to transport all the traffic that they can handle adequately, efficiently and economically in the territory they serve without added competition of a new operation, unless distinguishing factors not shown in the record warrant a departure from the usual Commission policy.

There is no specific evidence showing that the shipper has been unable to obtain adequate transportation upon reasonable request therefor, nor has it indicated in any respect that its business has suffered from any inadequacy in the existing services available from certain of the protestants and applicants.

The allegations and statements of the shipper against the protestants have been successfully rebutted and that the continuing favorable use by the shipper of the protestant Shaw's services militates against its allegations.

The Board further stated:

"In short, the record is bereft of any affirmative showing of a need for service based upon evidence of recurring or consistent inability to secure adequate and satisfactory service from existing carriers. The totality of shipper's evidence fails to demonstrate any probative need for additional service, and we cannot conclude that five grants of authority, substantially duplicating that which is presently available from existing carriers, including three protestants, are warranted. * * * In addition, we are aware of five or more recent grants of similar authority in which other carriers were granted authority from shipper's plant sites herein to points in at least 14 of the sought states and the District of Columbia."

The Board compared the quality and the sufficiency of the evidence presented by applicants with the presentation made by Illini Beef Packers, Inc., in support of numerous applications granted by the Board in MC 10761 (Sub-No. 249), Transamerican Freight Lines, Inc., Extension—Joslin, Ill. In that proceeding the shipper identified all the carriers it was supporting and explained in detail the basis for its expected transportation requirements and its selection of the number of carriers to support for service to particular states or areas.

In summary the Board found:

"Upon consideration of the facts noted immediately above, together with shipper's previously described nebulous and unconvincing evidentiary showing, we believe that shipper's apparent lack of candor has, in part, misled this Commission into separate consideration of related matters without regard to other similar applications supported by it, and without

knowledge of the complete, overall transportation picture, including the scope of shipper's transportation needs and the transportation situation in the considered areas. Perhaps shipper believes that, as a result of such independent singular consideration, each application it supports might meet with favorable results, thereby availing to shipper a greater number of authorized common carriers. Not only is this approach inconsistent with the effective performance of the Commission's administrative functions, but it also leaves such contradictions of record that rational conclusions may not be reached regarding any possible real need for additional service to some particular areas. No additional authority may be granted under such circumstances and, accordingly, the applications must be denied.

"In each proceeding, we find that applicant has failed to establish that the present or future public convenience and necessity require the proposed operation; and that the applications should be denied. \* \* \*"

Contemporaneously with the filing of the report of Review Board No. 3, the applications of Jenkins Truck Lines, Inc., MC 61592 (Sub-No. 200), Nationwide Carriers, Inc., MC 117940 (Sub-No. 51), Bray Lines, MC 112822 (Sub-No. 161), Bredehoeft MC 127028 (Sub-No. 6), and Adams, MC 134922 (Sub-No. 9) were disposed of as follows:

"Investigation of the matters and things involved in these proceedings having been made and said Review Board on the date hereof having made and filed a report herein, containing its findings of facts and conclusions thereof, which report is hereby made a part hereof:

"It is ordered that the applications be and they are hereby denied."

The plaintiffs' subsequent applications (Bray Sub-No. 209 and Bredehoeft Sub-No. 12) sought authority to operate from Allen's new facilities in Crawford County, Arkansas, to all points in the United States except Alaska and Hawaii. These subsequent applications were also supported only by Allen, and in addition to providing Allen with two complete nationwide services from its two new plants, would expand the service from the five original plants.

The same Review Board subsequently issued orders, dated May 18, 1972, denying the later-filed applications and finding that in both cases "applicant has failed to establish that the present or future public convenience and necessity require the proposed operation." In reaching this conclusion, the Review Board, in MC–127028 stated:

"That in No. MC–61592 (Sub-No. 200), Jenkins Truck Line, Inc. Extension—Gentry Canned Goods, (not printed), decided April 4, 1972, a proceeding involving the same supporting shipper, protestants and similar related issues, this Board denied five applications, finding that each applicant had failed to establish that the present or future public convenience and necessity require the proposed operations; that shipper's evidence is vague and couched in general terms leaving the Commission to hypothesize as to the volume of traffic to be tendered applicant and what, if any, deficiency there is in existing service; that the only specific evidence in shipper's verified statements are the representative points listed to which shipments have been made and total tonnages from all of its involved origin facilities, collectively, to each sought State; that, generally, there is a lack of any indication in the proceedings as to the volume of traffic to be tendered to each respective applicant; that the evidence does not establish that the existing service available has been fully utilized or is inadequate; that shipper failed to indicate its use of any additional carriers which it recently supported for, or which were granted similar authority; and that shipper failed to identify all the carriers it was supporting and explain in detail the basis

for its expected transportation requirements and its selection of the number of carriers to support for service to particular States or areas;"

The Review Board then held, in each case, that:

"[T]he evidence submitted in support of the instant application, in the precise manner as in the above-mentioned proceeding, is vague and couched in general terms, and fails to evince any existing, unfilled need for the applicant's proposed service; and that, in conformity with the cited *Jenkins* proceeding, we conclude that no basis exists here for the conclusion that the present or future public convenience and necessity require the proposed operation;"

"*It further appearing*, That although applicant presently holds some authority, duplicative in part to that sought herein, to serve shipper at five of the involved origins, and, pursuant thereto, has been rendering continuous, satisfactory service to shipper, that fact, standing alone, does not cure the dearth of probative evidence on which to base a decision herein;

"*And it further appearing*, That, in the absence of sufficient probative evidence in support of the application, and in view of our conclusion in the preceding appearing paragraph, the issuance of a report discussing the evidence adduced by the applicant with respect to its fitness and ability to perform the proposed service, other than as discussed in the preceding appearing paragraph, or with respect to the protestants existing service would serve no useful purpose;

"Wherefore, and good cause appearing therefor:

"*We find*, That applicant has failed to establish that the present or future public convenience and necessity require the proposed operation; that this decision is not a major Federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act of 1969; and that the application should be denied.

"*It is ordered*, That said application be and it is hereby, denied."

## THE APPLICABLE LAW

The issues before the court have been thoroughly discussed and argued in excellent briefs heretofore submitted by counsel for the respective parties and by oral argument.

The limited scope of judicial review of the decisions of the Interstate Commerce Commission is a well-settled principle of administrative law.

In discussing the standard, the Supreme Court in Consolo v. Federal Maritime Comm., (1966) 383 U.S. 607, 86 S. Ct. 1018, 16 L.Ed.2d 131, beginning at page 619 of 383 U.S. said:

"Section 10(e) of the Administrative Procedure Act (60 Stat. 243, 5 U.S.C. § 1009(e) (1964 ed.)) gives a reviewing court authority to 'set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, [or] an abuse of discretion . . . [or] (5) unsupported by substantial evidence . . . .' Cf. United States v. Interstate Commerce Comm'n, 91 U.S.App.D.C. 178, 183–184, 198 F.2d 958, 963–964, cert. denied, 344 U.S. 893 [73 S.Ct. 212, 97 L.Ed. 691]. We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229 [59 S.Ct. 206, 83 L.Ed. 126]. '[It] must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' Labor Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660]. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administra-

tive agency's finding from being supported by substantial evidence. Labor Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106 [62 S.Ct. 960, 86 L.Ed. 1305]; Keele Hair & Scalp Specialists, Inc. v. FTC [5 Cir.], 275 F.2d 18, 21.

"Congress was very deliberate in adopting this standard of review. It frees the reviewing courts of the time-consuming and difficult task of weighing the evidence, it gives proper respect to the expertise of the administrative tribunal and it helps promote the uniform application of the statute. These policies are particularly important when a court is asked to review an agency's fashioning of discretionary relief. In this area agency determinations frequently rest upon a complex and hard-to-review mix of considerations. By giving the agency discretionary power to fashion remedies, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency."

In Yellow Forwarding Company v. I.C.C., (D.Kan.1973) 369 F.Supp. 1040, a three-judge court, in considering the standard, beginning at page 1044 said:

"The task of weighing the evidence is for the Commission and not the Court. Manley Transfer Co., Inc. v. United States (not yet reported, KC–3515, op. May 15, 1973) [now reported at D.C., 350 F.Supp. 1216]; State Corporation Commission of Kansas v. United States, 216 F.Supp. 376 (D.C.Kan. 1963), aff'd, 375 U.S. 15, 84 S.Ct. 60, 11 L.Ed.2d 39. The wisdom or 'rightness' of the Commission's decision in matters committed to its expertise and determination is not an issue before the reviewing court. Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432 (1942); United States v. Pierce Auto Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); State Corpora-

tion Com'n of Kansas v. United States, 184 F.Supp. 691 (D.C.Kan. 1956). If the order to be reviewed is based upon adequate findings supported by substantial evidence, and the Commission has acted within the scope of its statutory authority, we must affirm. Land Air Delivery, Inc. v. United States, 327 F.Supp. 808 (D. C.Kan.1971); Associated Wholesale Grocers, Inc. v. United States, 272 F. Supp. 274 (D.C.Kan.1967)."

In Arkansas-Best Freight System, Inc., v. United States, (W.D.Ark.1973) 364 F.Supp. 1239, a three-judge court extensively reviewed and discussed the statutory provisions and many decisions defining and clarifying the scope of review. The court does not believe it is necessary to repeat what was said in that opinion, and by reference includes herein the discussion of the scope of judicial review as set forth at pages 1256-1258.

In considering applications seeking to serve the same shipper from its group of plants, the ICC must follow the mandate of the national transportation policy, 49 U.S.C. preceding § 1. The Congress, by the enactment of that Act, sought to establish and preserve a national transportation system by water, highway and rail, as well as other means, "adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense." All of the provisions of the Act should be administered and enforced with a view of carrying out the declaration of policy. Schaffer Transportation Co. v. United States, (1957) 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117.

Sec. 207(a) of the Interstate Commerce Act, 49 U.S.C. 307(a), provides that subject to Section 310 of the Motor Carriers Act, a certificate shall be issued to any qualified applicant therefor if it is found that the applicant is fit, willing and able properly to perform the service proposed and to conform to the provisions of the Act, and further that the proposed service "to the extent to be

authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

 The court has heretofore set forth the procedure that was adopted and followed by the Commission. The administrative practice followed by the Commission has long been recognized as an expeditious and entirely proper means of processing applications such as those now before the court. United States v. Pierce Auto Freight Lines, Inc., (1946) 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Wales v. United States, (N.D. Texas 1952) 108 F.Supp. 928, aff'd per curiam, 345 U.S. 954, 73 S.Ct. 941, 97 L.Ed. 1375. The question of whether or not to consolidate administrative proceedings is a matter for administrative discretion. American Trucking Assns., Inc. v. United States, (1945) 326 U.S. 77, 65 S.Ct. 1499, 89 L. Ed. 2065.

In Lake Shore Motor Freight Co. v. United States, (N.D. Ohio 1968) 310 F. Supp. 957, the court at page 960 said:

"In proceedings before the Commission, consolidation is permissible when in the discretion of the Commission 'a large portion of the evidence adduced applies equally to all of the applications.'"

In a similar case, Mississippi-East, Inc. v. United States, (W.D.Pa.1969) 301 F.Supp. 1332, the court at page 1334 said:

"There is much to be gained in consolidated proceedings. Not only is there benefit to the Commission in having the various applications for service in a single area joined together, but the parties benefit as well, applicants and protestants alike."

The plaintiffs at page 9 of their initial brief state:

"It should be emphasized at the outset that our quarrel is not with the fact that the Commission chose to deal with two of the applications along with three others in a single report. That separately pending applications may be consolidated for purpose of decision is by now well settled."

The plaintiffs on their initial brief contend that the record presents three questions which they state as follows:

1. That these cases were not decided exclusively on their own record but in part on records in other proceedings and have been disposed of on the basis of findings or conclusions which have no applicability to these cases, and which overlook or are fully contrary to the evidence in these cases, and thus operate to deny plaintiffs due process of law.

2. That the orders denying two of the applications, Bredehoeft Sub-12 and Bray Sub-209, are not based on any independent findings of fact upon the evidence presented in support thereof, but solely upon the basis of findings, conclusions, and a rationale borrowed from the decisions denying the other two applications and without any regard to the difference in parties, issues and proof between the two separate groups of applications, and violate the Administrative Procedure Act and the minimum guarantees of procedural fairness.

3. Whether in making the decisions in these cases, the Commission has unlawfully subjected the plaintiffs to new previously unannounced and more stringent evidentiary requirements and decisional standards, and by denying plaintiffs any opportunity to meet these new requirements and standards, has deprived plaintiffs of procedural due process.

The court has carefully considered each of these contentions, and in view of the facts disclosed by the record and the procedures followed, the court is of the opinion that the contentions are each without merit.

In Carolina Freight Carriers Corp. v. United States, (W.D.N.C. 1971) 323 F. Supp. 1290, the court at page 1296 said:

"The plaintiffs contend they were denied due process of law in the following instances: (1) The Commis-

sion used the 'Dando' procedure in the instant case; (2) The Commission failed to grant a new hearing and decided the case upon a stale record; and (3) The Commission failed to give proper attention to all their contentions. Our examination of the record reveals these contentions to be without merit.

"The use of the 'Short Form Decisional Process' which is referred to as 'Dando', is discretionary with the Commission and has been held by many courts to be permissible. It seems to be settled law that where the Commission finds no material error in the statement of facts and conclusions thereon by the hearing examiner, it is not required to prepare a detailed report but may affirm and adopt the report as its own. Carolina Freight Carriers Corporation v. United States, 307 F.Supp. 723 (W.D.N.C.1969). When the 'Dando' procedure is used, it means, of course, that the Commission's action stands or falls upon the examiner's report."

In United States v. Pierce Auto Freight Lines, Inc., (1946) 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821, the court at page 695 of 66 S.Ct. said:

"In the absence of any showing of specific prejudice, the claim comes down to the highly technical objections that the Commission, in the final stage of forming its judgment, could not in either case take account of what had been done in the other, notwithstanding the closely related character and objects of the applications and the prior proceedings. The contention in its farthest reach amounts to a legal version of the scriptural injunction against letting one's right hand know what one's left hand may be doing."

In Illinois Commerce Comm. v. United States, (E.D.Ill.1970) 320 F.Supp. 205, Headnote 6 reads as follows:

"6. Commerce.

"Interstate Commerce Commission is not required to specifically refer to and state in its report the weight it accorded to testimony of each witness, even if that testimony is expert or is deemed by a party to be of major significance; Commission need not specify weight given to any item of evidence or disclose mental operation by which its decisions are reached."

In Consolidated Copperstate Lines v. United States, (C.D.Cal.1968) 293 F. Supp. 858, Headnote 6 reads as follows:

"6. Commerce.

"That Interstate Commerce Commission considered in one report and order all four applications of motor carriers to purchase operating rights of other motor carriers and did not separate item by item the findings in regard to each application was not fatal to Commission's order denying the applications. Interstate Commerce Act, §§ 5, 207, 49 U.S.C.A. §§ 5, 307."

In Carl Subler Trucking, Inc., v. United States, (S.D. Ohio 1970) 313 F.Supp. 971, the court at page 979 said:

"The requirement of Section 8(b) of the Administrative Procedure Act, 5 U.S.C. § 557(c) for adequate findings and conclusions does not require the Commission to furnish an analysis of each item of evidence nor to disclose the mental processes through which the decision was reached. Caravelle Express, Inc. v. United States, 287 F.Supp. 585, 588 (D.Neb. 1968). The findings of the Commission are adequate when they contain sufficient particularity to inform the parties involved of the purport thereof and the reasons therefor and to enable the reviewing court to discern with confidence the agency's conclusions and their reasons so that the court can judge whether the agency acted within the scope of its statutory authority. Consolidated Freightways Corp. of Delaware v. United States, 289 F. Supp. 126, 132 (N.D.Cal.1968); Minneapolis & St. Louis R. Co. v. United States, 361 U.S. 173, 193, 80 S.Ct. 229, 4 L.Ed.2d 223 (1959).

"In a case such as this where the ultimate finding is that the applicant has not met its burden, it need be supported only by sufficient basic findings of fact to warrant a reviewing court in concluding that the Commission was not without rational basis in finding that the applicant had not met its burden. New York Central R. Co. v. United States, 99 F.Supp. 394, 401 (D.Mass.1951) affirmed Interstate Commerce Commission v. New York Central R. Co., 342 U.S. 890, 72 S.Ct. 201, 96 L.Ed. 667 (1951); Chicago & Eastern Illinois R. Co. v. United States, 107 F.Supp. 118, 125 (S.D. Ind. 1952)."

On December 14, 1973, the record of the proceedings before the Commission was filed with the Clerk of this Court and all interested parties were notified of the filing of the same. A thorough analysis of the record presents only three basic questions:

1. Whether the Commission's procedural handling of the four Bray and Bredehoeft applications was a proper exercise of its discretion.

2. Whether there is substantial evidence in each of the records developed pursuant to the applications of Bray and Bredehoeft, all of which were supported only by the Allen Canning Company, to justify the Commission's conclusion that the applicants had failed to carry their burden of showing a public need for their proposed operations; and

3. Whether the Commission acted within its discretion in denying plaintiffs' petition for reopening or reconsideration.

A complete history of these applications is contained in the record. The applications immediately involved here represent only a part of the Allen complete program. Sheets 10 and 11 of the verified statment of Frank J. Hammett, Vice-President, Traffic, of Willis Shaw, contains a full statement of the situation that existed at the time the applications now under consideration were filed

and which presently exists. The modified procedure, as heretofore set forth, was thoroughly explained to the plaintiffs, and the Commission, through its Board, had before it all material facts necessary to be considered in the determination of the applications.

■ There is no dispute but that the plaintiffs were fully advised by the Commission's modified procedure notice that they were required to include in their initial verified statement a copy of their pertinent operation authority, recent financial statements, a description of the equipment to be used in a proposed operation, and evidence regarding their method of insuring compliance by its employees with the Commission's safety and other regulations, along with other pertinent information, and that their rebuttal statement in opposition to the protestants' statements "cannot be used to introduce new evidence not referred to in its initial statement, but must be confined to answering points raised by protestants in their reply statements."

■ The central issue in this case is whether or not the evidence of record submitted by each of the plaintiffs' applications provides rational support for the Commission's findings and that the plaintiffs had failed to carry their burden of showing that a public need existed for their proposed new operations. In each proceeding the sole supporting shipper, Allen, failed to show or even discuss in any sort of comprehensive fashion the alleged inadequacies of the many presently existing services available to its company. A mere reading of the record, together with the report of the Commission, is convincing that the decisions of the Commission are upon a rational basis and are supported by substantial evidence. There is nothing in the record that supports the contentions of plaintiffs.

Apparently the plaintiffs would have the Commission decide a case without regard to other orders of the Commission defining the rights and obligations

of the holders of certificates of convenience and necessity covering the territory or parts of the territory involved in the applications under consideration, and refuse to consider the closely related character and objects of the applications and the prior proceedings in utter disregard of the "present or future public convenience and necessity." See, Arkansas-Best Freight System, supra, pp. 1239, 1262.

The plaintiffs further contend that the fact that they are operating under a grant of temporary authority should have been considered as proof that permanent authority should be granted.

Sec. 310a, 49 U.S.C.A., provides that the grant of temporary authority "shall create no presumption that corresponding permanent authority will be granted thereafter."

■ In applications for temporary authority the scope of judicial review is limited to a determination of whether the Commission's orders are arbitrary or capricious, an abuse of discretion, or for some other reasons, contrary to law.

■ The "substantial evidence" rule applicable to judicial review of many Commission orders relating to grants of certificates of convenience and necessity is not applicable in grants of temporary authority to motor carriers under 49 U.S.C.A. § 310a.

■ Motor carriers holding certificates of convenience and necessity for transportation services in the area traversed by temporary authority routes do not have property rights protected by due process guarantees against temporary authority competition since the Commission finds need for temporary authority services and the absence of available capable carriers to supply the need.

■ The Commission's decision on a grant of temporary authority is not determinative of an application for permanent authority for transportation services.

The plaintiffs concluded their written brief with the claim alleged in their complaint that the Commission changed its standards in acting upon the applications. The court has been unable to find where the Commission changed its standards in determining this controversy. Rather all the Commission did was to hold Bray and Bredehoeft to the usual standards and found that they had not met the standards. It is apparent from a reading of the report of the Commission that the Commission correctly handled the four applications and that there was no abuse of the discretion of the Commission.

It is also clear to the court that the applicants failed to carry their burden of showing a public need for their proposed operations and that the findings of fact and conclusions made by the Commission are abundantly supported by uncontradicted facts and are rational.

Therefore, there is no basis for reversal of the Commission's decisions, and judgment should be entered affirming the orders of the Commission and dismissing the complaint of the plaintiffs.